**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JESSE DAVIDA, Individually and on Behalf of Others Similarly Situated, | § | Civil Action No. 5:14-cv-552-HJB |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| NEWPARK DRILLING FLUIDS, LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**DEFENDANT NEWPARK DRILLING FLUIDS, LLC'S MOTION TO DISMISS, IN
PART, OR OTHERWISE LIMIT PLAINTIFFS' STATE LAW CLASSES AND CLAIMS**

I.    INTRODUCTION ........................................................................................1

II.   FACTS ......................................................................................................3

III.  LEGAL ANALYSIS AND ARGUMENT ...........................................................5

     A.  Plaintiffs Have Not Established The Basis For Jurisdiction Of The State Law Claims..........................................................................................5

         1.  The Court Does Not Have CAFA Jurisdiction Over The State Law Claims..........5

         2.  The Court Should Decline Supplemental Jurisdiction Over The Rule 23 State Law Claims. ..................................................................6

     B.  Plaintiffs McCabe And Clark, Who Released Their State Law Overtime Claims, Must Be Dismissed As Class Representatives Based On Lack Of Jurisdiction, And The Court Should Also Dismiss Or Otherwise Exclude Putative State Law Class Members Who Also Have  Released Their State Law Overtime Claims. ......................9

         1.  Rule 12(b)(1) Motion To Dismiss Standard. ..........................................9

         2.  McCabe And Clark Released Their Claims And Lack Standing To Assert State Overtime Claims Individually And On Behalf Of Others. ...........................9

         3.  Under Texas Law, The Severance Agreement Released The State Law Overtime Claims Of McCabe, Clark, And Any Other FST Who Signed It. .........10

         4.  New York, Pennsylvania, Ohio, And North Dakota Law Also Enforce Broad Releases Of Claims Reached Through Private Settlement. ...................................12

     C.  New State Overtime Claims Do Not Relate Back To The Original FLSA Complaint, And Tolling Of State Claims Should Begin From The Filing Of The FAC. ..........................................................................................14

         1.  Rule 15(c)'s Relation Back Standard...................................................15

         2.  The State Overtime Claims Are New And Distinct From The Original FLSA Claim And Do Not Arise Out Of The Same Conduct, Transaction, Or Occurrence Alleged In The Original Complaint.....................................................15

         3.  Plaintiffs Should Not Be Permitted To Use Relation Back To Gain An Advantage That They Cannot Obtain For FLSA Opt-ins And Exploit Differences Between FLSA Opt-in Collective Actions And Rule 23 Opt-out Class Actions To Gain Additional Tolling Of The Statute Of Limitations. ..........16

         4.  Newpark Had No Notice As To Whether And Which State Law Classes Plaintiffs Would Seek To Add Until They Filed Their Motion To Amend...........18

IV.  CONCLUSION..........................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acquilino v. Home Depot U.S.A., Inc.,*
2006 WL 2023439 (D.N.J. July 17, 2006)............................................................................7

*American Pipe & Constr. v. Utah,*
414 U.S. 538 (1974).............................................................................................16, 17, 18

*Anderson v. City of Wood Dale, IL,*
1995 WL 106318 (N.D. Ill. March 9, 1995) .......................................................................20

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)............................................................................................................6

*Asher v. Unarco Material Handling, Inc.,*
596 F.3d 313 (6th Cir. 2010) ..............................................................................................16

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).............................................................................................................6

*Budge v. Post,*
643 F.2d 372 (5th Cir. 1981) ...............................................................................................11

*Castillo v. Hernandez,*
2010 WL 4595811 (W.D. Tex. Nov. 4, 2010)................................................................16, 17

*Chaplin v. NationsCredit Corp.,*
307 F.3d 368 (5th Cir. 2002) ...............................................................................................11

*Charlot v. Ecolab, Inc.,*
97 F. Supp. 3d 40 (E.D.N.Y. Mar. 27, 2015)............................................................... passim

*Christianson v. Newpark Drilling Fluids, LLC,*
No. 4:14-cv-03235 (S.D. Tex. Mar. 19, 2015) .....................................................................8

*CIC Prop. Owners v. Marsh USA Inc.,*
460 F.3d 670 (5th Cir. 2006) ...............................................................................................11

*City of Philadelphia. v. Beretta U.S.A. Corp.,*
277 F.3d 415 (3d Cir. 2002)................................................................................................13

*Cliff v. Payco Gen. Am. Credits, Inc.,*
363 F.3d 1113 (11th Cir. 2004) ...........................................................................................20

*Dallas Gay Alliance, Inc. v. Dallas Cnty. Hosp. Dist.,*
719 F. Supp. 1380 (N.D. Tex. 1989) .....................................................................................9

*De Asencio v. Tyson Foods, Inc.*,
   342 F.3d 301 (3d Cir. 2003)...................................................................................6, 7

*DeFilippo v. Barclays Capital, Inc.*,
   552 F. Supp. 2d 417 (S.D.N.Y. 2008)...........................................................................12

*Dillard v. Vicksburg Med. Ctr., Inc.*,
   695 F. Supp. 880 (S.D. Miss. 1988)..............................................................................16

*Espinosa v. Delgado Travel Agency, Inc.*,
   2006 U.S. Dist. LEXIS 71085 (S.D.N.Y. Sept. 27, 2006)...........................................20

*Feuerstack v. Weiner*,
   2013 WL 3949234 (D.N.J. July 30, 2013)...................................................................20

*Gandhi v. Dell Inc.*,
   2009 WL 1940144 (W.D. Tex. July 2, 2009) ................................................................8

*Garner v. Gutierrez*,
   2013 WL 754105 (S.D. Tex. Feb. 27, 2013) ...............................................................14

*Gen. Agents Ins. Co. of Am., Inc. v. El Naggar*,
   340 S.W.3d 552 (Tex. App. 2011)...............................................................................11

*Genesis Healthcare Corp. v. Symczyk*,
   133 S. Ct. 1523 (2013)....................................................................................................5

*Ginaldi v. O'Brien*,
   2015 WL 5316439 (E.D. Pa. Sept. 11, 2015) .............................................................12

*Glewwe v. Eastman Kodak Co.*,
   2006 WL 1455476 (W.D.N.Y. May 25, 2006) ..............................................................8

*Gordon v. JPMorgan Chase Bank, N.A.*,
   2012 WL 1552050 (S.D. Tex. Apr. 30, 2012) .............................................................10

*Great Cent. Ins. Co. v. Ins. Servs. Office, Inc.*,
   74 F.3d 778 (7th Cir. 1996) .........................................................................................13

*Griffin v. Dugger*,
   823 F.2d 1476 (11th Cir. 1987) .....................................................................................9

*Hamilton v. O'Connor Chevrolet, Inc.*,
   2003 WL 22953337 (N.D. Ill. Dec. 12, 2003)........................................................15, 16

*Hastings Pork v. Johanneson*,
   335 N.W.2d 802 (N.D. 1983) .......................................................................................13

*Hawkins v. Comparet–Cassani,*
    251 F.3d 1230 (9th Cir. 2001) ...........................................................................10

*Holmes v. Greyhound Lines, Inc.,*
    757 F.2d 1563 (5th Cir. 1985) ...........................................................................15

*Hummel v. AstraZeneca LP,*
    575 F. Supp. 2d 568 (S.D.N.Y. 2008)................................................................12

*In re Am. Family Mut. Ins. Co. Overtime Pay Litig.,*
    638 F. Supp. 2d 1290 (D. Colo. 2009) ...............................................................7

*Jackson v. City of San Antonio,*
    220 F.R.D. 55 (W.D. Tex. 2003) .........................................................................7

*Joe v. First Bank Sys., Inc.,*
    202 F.3d 1067 (8th Cir. 2000) ...........................................................................13

*Jones v. Alcoa, Inc.,*
    339 F.3d 359 (5th Cir. 2003) .............................................................................14

*Kalyanaram v. Burck,*
    225 S.W.3d 291 (Tex. App. 2006)......................................................................11

*Keepseagle v. Veneman,*
    2001 WL 34676944 (D.D.C. Dec. 21, 2001) ....................................................10

*King Cnty., Wash. v. IKB Deutsche Industriebank AG,*
    2010 WL 2010943 (S.D.N.Y. 2010)...................................................................10

*Kraft v. Johanns,*
    2006 WL 2583326 (D.N.D. May 3, 2006) .........................................................13

*LaChapelle v. Owens–Illinois, Inc.,*
    513 F.2d 286 (5th Cir. 1975) .........................................................................5, 16

*Lewis v. Mathes,*
    829 N.E.2d 318 (Ohio App. 2005)......................................................................13

*Lignore v. Hosp. Univ. of Pennsylvania,*
    2006 WL 1804571 (E.D. Pa. June 28, 2006) ....................................................12

*Mathews v. ALC Partner Inc.,*
    2009 WL 2390526 (E.D. Mich. July 31, 2009) ..................................................6

*Midland Funding LLC v. Brent,*
    2010 WL 703066 (N.D. Ohio Feb. 22, 2010) ....................................................20

*Nail v. Brazoria Cnty. Drainage Dist. No. 4*,
    992 F. Supp. 921 (S.D. Tex. 1998) .......................................................11

*Narouz v. Charter Commc'ns, LLC*,
    591 F.3d 1261 (9th Cir. 2010) ............................................................10

*Neary v. Metro. Prop. & Cas. Ins. Co.*,
    472 F. Supp. 2d 247 (D. Conn. 2007).....................................................7

*Paramount Fin. Commc'ns, Inc. v. Broadridge Inv'r Commc'n Sols., Inc.*,
    2015 WL 4093932 (E.D. Pa. July 7, 2015)...........................................14

*Ramming v. U.S.*,
    281 F.3d 158 (5th Cir. 2001) ...............................................................9

*Randolph v. Centene Mgmt. Co., LLC*,
    2015 WL 5794326 (W.D. Wash. Oct. 5, 2015) ...................................20

*Restifo v. McDonald*,
    230 A.2d 199 (Pa. 1967) ....................................................................13

*Rodriguez v. Christus Spohn Health Sys. Corp.*,
    628 F.3d 731 (5th Cir. 2010) ...............................................................9

*Sears, Roebuck & Co. v. Jardel Co.*,
    421 F.2d 1048 (3d Cir. 1970)..............................................................12

*Senterfitt v. SunTrust Mortg., Inc.*,
    385 F. Supp. 2d 1377 (S.D. Ga. 2005)................................................20

*Simel v. JP Morgan Chase*,
    2007 WL 809689 (S.D.N.Y. Mar. 29, 2007) ......................................12

*Smith v. EMC Corp.*,
    393 F.3d 590 (5th Cir. 2004) .............................................................11

*Stewart v. FirstEnergy Corp.*,
    2006 WL 840369 (N.D. Ohio Mar. 29, 2006) ....................................13

*TIG Ins. Co. v. Aon Re, Inc.*,
    521 F.3d 351 (5th Cir. 2008) .............................................................13

*United Mine Workers v. Gibbs*,
    383 U.S. 715 (1966).............................................................................6

*Warth v. Seldin*,
    422 U.S. 490 (1975).............................................................................9

*Williams v. Glash*,
  789 S.W.2d 261 (Tex. 1990)................................................................11

*Williams v. Phillips Petroleum Co.*,
  23 F.3d 930 (5th Cir. 1994) ................................................................11

*Wong v. HSBC Mortg. Corp. (USA)*,
  2009 WL 151014 (N.D. Cal. Jan. 21, 2009) ........................................7

STATUTES

43 Pa. Cons. Stat. § 260.9a(g)................................................................14

28 U.S.C. § 1332(d)(1)(A)........................................................................5

28 U.S.C. § 1332(d)(1)(B)........................................................................5

28 U.S.C. § 1332(d)(1)(D)........................................................................5

28 U.S.C. § 1332(d)(5)(B)........................................................................5

28 U.S.C. § 1367(c)..................................................................................6

29 U.S.C. § 256......................................................................................17

Class Action Fairness Act ("CAFA")................................................1, 5, 6

Fair Labor Standards Act ("FLSA")................................................ passim

N.D. Cent. Code § 34-01-13 ..................................................................14

N.Y. Lab. Law § 663(3)..........................................................................14

Ohio Rev. Code § 2305.11......................................................................14

OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(1)........................................................................5, 9

Fed. R. Civ. P. 12(b)(6)..........................................................................14

Fed. R. Civ. P. 15............................................................................15, 20

Fed. R. Civ. P. 15(c) ............................................................................2, 15

Fed. R. Civ. P. 15(c)(1)(B) ................................................................15, 16

Fed. R. Civ. P. 23.................................................................. passim

# I.    INTRODUCTION

Newpark moves to dismiss, in part, or otherwise limit Plaintiffs' state law classes and claims based on lack of jurisdiction and failure to state a claim to the extent claims are time-barred and/or covered by a valid relaese.  First, the Court does not have CAFA jurisdiction over state law claims because there are fewer than 100 state law class members.  Second, the Court should decline exercising supplemental jurisdiction over state law claims.  Davida has no standing to assert any state law claims.  And exercising supplemental jurisdiction at this late stage would require the Court's attention to brand new Plaintiffs asserting new claims based on the laws of other states that involve different statutes of limitations ("SOL") periods, require different discovery and legal analysis, and include class members who received FLSA notice, but elected not to opt-in.

Third, Plaintiffs McCabe and Clark are the class representatives for the Pennsylvania, Ohio, and North Dakota state law classes[1], even though each executed a release of their state law wage claims in exchange for severance. Plaintiffs' counsel negotiated, approved, and successfully sought Court approval of the severance agreements.  The agreements expressly state that Texas law governs and release state overtime claims "unless prevented by law."  The laws of Texas (and the Rule 23 states[2]) do not prevent the release of state overtime claims.  McCabe and Clark do not have standing to assert claims they released.  Nor can any plaintiff purport to represent individuals based on claims those individuals released.  The Court should dismiss McCabe and Clark's state law claims, dismiss McCabe and Clark as class representatives,

---

[1]    Even though the FAC alleges that McCabe worked in Ohio and fails to allege that he worked in Pennsylvania, he is proffered, along with MacDougall, as the class representative for the Ohio and Pennsylvania classes.  (Dkt. 123, ¶¶ 12, 149, 151-154, 157-161.)  Clark is proffered as the sole class representative for the North Dakota class.  (*Id.*, ¶¶ 13, 140, 142-145.)

[2]    The FAC adds Rule 23 class claims based on New York, Pennsylvania, Ohio, and North Dakota law.

dismiss the North Dakota class for lack of a class representative, and to dismiss putative class members who have executed a release or otherwise limit the state class definitions to exclude FSTs who have also signed releases.

Fourth, the look-back period for the state law claims should be based on the filing of the FAC, not on the original Complaint. In Rule 23 class actions, the filing of a putative class action automatically tolls the SOL for all putative class members. But in FLSA actions, each individual's SOL continues to run until that he affirmatively consents to join. Plaintiffs attempt to get an extra 15 months for Rule 23 class members who have not opted in and extend the SOL for MacDougall and opt-ins beyond what they would be entitled to based on their consent:



Davida did not notify Newpark he would add New York, Pennsylvania, Ohio, and North Dakota state law classes until he moved to amend, depriving Newpark of the opportunity to analyze the scope of potential liability under each state law separately and independently of its analysis under the FLSA. Relation back would "defeat the purpose of Rule 15(c)'s notice requirement, if the filing of a single FLSA collective action automatically put a national

defendant on notice of any and all potentially related state class claims that may arise." *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 56 (E.D.N.Y. Mar. 27, 2015). Relation back should not apply to the new state law claims.

## II.    FACTS

Davida filed this lawsuit in June 2014 alleging only a claim under the FLSA. (Dkt. 1.) Davida worked for Newpark only in Texas (Dkt. 43-3, Davida Depo., 158:5-8) and lacks standing to assert New York, Pennsylvania, Ohio, or North Dakota claims. In September 2015, Davida sought to amend the Complaint to add three new named Plaintiffs and assert New York, Pennsylvania, Ohio, and North Dakota Rule 23 state overtime claims. (Dkt. 106.)

In February 2015, counsel for both parties negotiated about and agreed on the terms of a severance agreement Newpark would offer FSTs during layoffs. (Ex. A, Fife Dec. ¶ 2.) The agreed severance agreement included a cover statement to FSTs informing them, *inter alia*, of this pending lawsuit and providing full contact information for Plaintiffs' counsel.[3] (Dkt. 55-2.) The agreement contained a broad release of any and all claims, other than FLSA claims and expressly informed FSTs that this release may impact any state law overtime claims:

> In consideration for Newpark's payment of the Severance Payment and other consideration in this Agreement, Employee… hereby **voluntarily and knowingly waives, releases, acquits and forever discharges Newpark…of and from all claims, charges, complaints, liabilities, obligations, promises, agreements, contracts, damages, actions, causes of action, suits or other liabilities of any kind or character**, whether known or hereafter discovered, fixed or contingent, **arising from or in any way connected with or related to Employee's employment with and/or separation from employment with Newpark** and/or as a result of any other matter arising through the date of Employee's signature on this Agreement. **Employee agrees not to file a lawsuit to assert any such claims.** However, nothing in this paragraph prevents Employee from asserting a claim for unpaid overtime wages under the [FLSA], but **may impact your rights under certain state wage laws.**"

---

[3]    Newpark and Plaintiff filed motions and briefing in connection with Newpark presenting severance offers to FSTs. *See* Dkt. 50, 53, 54, 55, 56, 57, and 58.

\*    \*    \*

> This waiver, release, acquittal and discharge includes but is not limited to: (1) claims arising under any federal, state, or local law regarding employee rights…
> ; (6) **unless prevented by law, claims for wages or any other compensation, including overtime <u>other than</u> claims under the Fair Labor Standards Act ("FLSA")**.

(Dkt. 55-1, ¶¶ 4-5, bolded emphasis added, underlining in original.)

Plaintiffs' counsel originally wanted to remove the provision releasing state wage and overtime claims, and Newpark's counsel negotiated to keep it in. (Ex. A., Fife Dec. ¶ 3.) The final version of the agreement that Plaintiffs' counsel filed with the Court included a negotiated revision from releasing state overtime claims ***"to the extent permitted by law"*** (which is what Plaintiffs' counsel had offered at one point in the negotiation, and which Newpark rejected) to releasing state overtime claims ***"unless prevented by law"*** (which is what both parties eventually agreed to, and which this Court approved on Plaintiff's Motion). (Ex. A, Fife Dec. ¶ 4; Dkt. 55-1, 62.) The severance agreement containing tracked changes that Plaintiffs' counsel filed with the Court documents this negotiated term:



(excerpt from Dkt. 55-1.) The severance agreement also includes a choice of law provision that expressly states: "This Agreement shall be governed by and interpreted under the laws of the State of Texas without regard to Conflict of Laws." (Dkt. 55-1, ¶ 13.)

On February 26, 2015, ***Plaintiffs' counsel*** sought court approval of the final severance agreement and cover statement to FSTs. (Dkt. 55.) On March 4, 2015, the Court held a hearing on this issue and approved the form severance agreement and cover statement to FSTs. (Dkt.

62). McCabe and Clark, along with other FSTs who have worked in New York, Pennsylvania, Ohio, and/or North Dakota, executed the severance agreements in March 2015 and later and received cash severance payments in exchange. (Ex. B, Rainwater Dec. ¶¶ 3-8.)

### III. LEGAL ANALYSIS AND ARGUMENT

**A. Plaintiffs Have Not Established The Basis For Jurisdiction Of The State Law Claims.**

The Court ordered that the FAC "must expressly state the jurisdictional basis for any of these [state law] claims." (Dkt. 122.) It asserts original jurisdiction exists under the Class Action Fairness Act ("CAFA") and that the Court may exercise supplemental jurisdiction over the state law claims. (Dkt. 123, ¶¶ 3-7.) The state law claims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

### 1. The Court Does Not Have CAFA Jurisdiction Over The State Law Claims.

There is no CAFA jurisdiction where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5)(B). When determining CAFA numerosity, FLSA opt-ins should not be counted because CAFA applies only to Rule 23 class actions[4] and not to "fundamentally different" FLSA collective actions.[5] In this case, less than 100 employee FSTs were assigned to a work location in New York, Pennsylvania, Ohio, and North Dakota from September 2011 to September 2015.[6] (Ex. C, Coyle Dec. ¶ 6.)

---

[4] 28 U.S.C. § 1332(d)(1)(B) (defining "class action" as any civil action filed under Rule 23 or similar state statute). *See also* 28 U.S.C. § 1332(d)(1)(A) ("'class' means all of the class members in a ***class action***"); 28 U.S.C. § 1332(d)(1)(D) ("'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified ***class*** in a ***class action***") (emphasis added).

[5] *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA"); *LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) (same).

[6] This look-back period is more generous than should apply for the Pennsylvania, Ohio, and North Dakota classes because, as discussed in Section III.C.3, the Pennsylvania look-back period begins November 3, 2012 and the Ohio and North Dakota look-back periods begin November 3,

The FAC's conclusory allegation that "[t]he aggregate number of members of all proposed plaintiff classes is greater than 100" is not plausible, is factually incorrect, and is insufficient to meet the federal pleading standard. (Dkt. 123, ¶ 5.) "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The Court should dismiss the state law claims for lack of CAFA jurisdiction.[7]

## 2. The Court Should Decline Supplemental Jurisdiction Over The Rule 23 State Law Claims.

District courts can decline to exercise supplemental jurisdiction where (1) a claim raises novel or complex issues of state law; (2) the claim substantially predominates over the claim(s) giving rise to original jurisdiction; (3) the district court has dismissed all claims over which it had original jurisdiction; and (4) in exceptional circumstances presenting compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). If state law issues substantially predominate, whether in terms of proof, scope of the issues raised, or comprehensiveness of the remedy sought, state claims can be dismissed. *De Asencio v. Tyson Foods, Inc.,* 342 F.3d 301, 309 (3d Cir. 2003), *citing United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966).

In *De Asencio,* the Court held the proposed state law class action substantially predominated over the FLSA collective action. Plaintiff had waited until late in the litigation to raise the state law claim, which suggested that "certification of the state-law class was plaintiffs' second line of attack when the FLSA opt-in period yielded a smaller than desired federal class."

---

2013. For New York, from the beginning of 2011 to September 2011, there would have been very few Newpark employee FSTs performing work in New York because Newpark's operations there were minimal during that time, and before 2011, no Newpark employee FSTs performed work in New York. (Ex. C, Coyle Dec. ¶¶ 4-5.)

[7] *See, e.g., Mathews v. ALC Partner Inc.,* 2009 WL 2390526, at *4 (E.D. Mich. July 31, 2009) (granting 12(b)(1) motion where plaintiffs "made no showing whatsoever that the underlying facts of the case support this Court's CAFA jurisdiction").

*Id.* at 312. The Court found that the district court abused its discretion by exercising supplemental jurisdiction over a new state law class action claims, particularly because: the analysis underlying the plaintiff's state law statutory claim would involve distinct evidentiary issues that did not sufficiently overlap with the FLSA claim; the number of potential plaintiffs in the Rule 23 class action would be disproportionate to the number of opt-in plaintiffs in the FLSA collective action; and "the general federal interest in opt-in wage actions" weighed against exercising supplemental jurisdiction. *Id.* at 309-12.

Following *De Asencio*, numerous courts have declined to exercise supplemental jurisdiction over multiple Rule 23 state classes in FLSA collective actions. For example, in considering a certification motion in a hybrid FLSA collective and Rule 23 class action, this district followed *De Asencio* and declined to exercise supplemental jurisdiction over pendent plaintiffs who did not opt out of the Texas overtime class (based on a Texas statute providing overtime for fire and police personnel) and failed to opt-in to a FLSA action. *Jackson v. City of San Antonio*, 220 F.R.D. 55, 60-61 (W.D. Tex. 2003). The court considered the predominance of Texas state claims, the size of the opt-in class relative to the Rule 23 class, and the complexity of the litigation. *Id.* at 61. "To split the cause now, based upon the substance of the law giving rise to the claim, furthers the interests of justice and economy by ensuring that both claims proceed cleanly and in a precise fashion." *Id.*[8]

---

[8]   *See also, e.g., In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, 638 F. Supp. 2d 1290, 1298-1301 (D. Colo. 2009) (declining supplemental jurisdiction over Rule 23 Illinois, Ohio, Minnesota, and Wisconsin class claims because, *inter alia*, many of the putative class members had received notice of the FLSA action and declined to participate, differences in the state law overtime schemes, and differences in the scope of relief sought by the plaintiffs); *Wong v. HSBC Mortg. Corp. (USA)*, 2009 WL 151014 (N.D. Cal. Jan. 21, 2009) (declining supplemental jurisdiction where plaintiffs' claims presented novel issues of state law, including different exemption tests); *Neary v. Metro. Prop. & Cas. Ins. Co.*, 472 F. Supp. 2d 247, 251-52 (D. Conn. 2007); *Acquilino v. Home Depot U.S.A., Inc.*, 2006 WL 2023439, at **2-4 (D.N.J. July 17,

Davida never had standing to assert the recently added state law claims, and the parties have already heavily litigated the FLSA claims. Exercising supplemental jurisdiction means that the Court would now have to deal with new named Plaintiffs asserting new claims based on the laws of four other states, that involve different statutes of limitations periods, and that require different discovery and analysis. The new state law claims could delay the case because the Court would need to decide certification of each of the four state law classes, which includes putative class members who already received a class notice and **chose not to opt-in**.

The upcoming FLSA decertification inquiry will be significant. Under the "second-step determination," the Court will be asked to apply a "stricter standard" and "make[] a factual determination on the similarly situated question" based on the record developed through discovery and review of several factors, including "(1) the **disparate factual and employment settings of the individual plaintiffs**; (2) the **various defenses** available to defendant which appear to be **individual to each plaintiff**; and (3) fairness and procedural considerations." *Gandhi v. Dell Inc.*, 2009 WL 1940144, at *4 (W.D. Tex. July 2, 2009) (emphasis added) (citations omitted). The likelihood of decertification cannot be overestimated, given the strength of Newpark's arguments. For instance, Judge Atlas in the Southern District of Texas refused to conditionally certify a related action against Newpark, involving FSTs, because whether certain FSTs were properly classified as independent contractors required individual analysis that was not conducive to collective treatment, **even at the lenient notice stage**. *See Christianson v. Newpark Drilling Fluids, LLC,* No. 4:14-cv-03235, Dkt. 29 (S.D. Tex. Mar. 19, 2015), attached as Ex. D; *see also*, Mem. & Order denying Pl.'s Mot. For Recons., attached as Ex. E.

If decertified, this action will proceed as individual actions by named Plaintiffs, and if

---

2006); *Glewwe v. Eastman Kodak Co.,* 2006 WL 1455476, at *4 (W.D.N.Y. May 25, 2006).

any Rule 23 state law class claims remain, they would plainly predominate over the named Plaintiffs' individual FLSA claims. The new state law claims will require the Court to devote substantial time and resources to them, which will be all for naught upon decertification. The Court should decline to exercise supplemental jurisdiction over the new state law claims.

**B.     Plaintiffs McCabe And Clark, Who Released Their State Law Overtime Claims, Must Be Dismissed As Class Representatives Based On Lack Of Jurisdiction, And The Court Should Also Dismiss Or Otherwise Exclude Putative State Law Class Members Who Also Have  Released Their State Law Overtime Claims.**

**1.     Rule 12(b)(1) Motion To Dismiss Standard.**

Courts may dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Standing is a threshold jurisdictional question. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). "A district court may determine its jurisdiction based on '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 734 (5th Cir. 2010).

In a class action suit with multiple claims, at least one named class representative must have standing with respect to each claim, and class representatives do not gain standing through injuries to putative class members. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 502 (1975) (dismissing class action for lack of standing; plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent").[9]

**2.     McCabe And Clark Released Their Claims And Lack Standing To Assert State Overtime Claims Individually And On Behalf Of Others.**

---

[9]     *See also, Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) ("each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim"); *Dallas Gay Alliance, Inc. v. Dallas Cnty. Hosp. Dist.*, 719 F. Supp. 1380 (N.D. Tex. 1989) (plaintiff who alleges no individual injury cannot seek relief on behalf of herself or himself or any other member of a class).

Plaintiffs who have released their claims lack injury and, therefore, standing to prosecute claims. *See, e.g., Gordon v. JPMorgan Chase Bank, N.A.*, 2012 WL 1552050, at *2 (S.D. Tex. Apr. 30, 2012) (dismissing action where plaintiff released defendants from and waived all claims in lawsuit), *aff'd*, 505 F. App'x 361 (5th Cir. 2013).[10] If no class representative has standing with respect to a claim, that claim must be dismissed. *King Cnty., Wash. v. IKB Deutsche Industriebank AG*, 2010 WL 2010943 (S.D.N.Y. 2010) (dismissing claims based on the purchase of a particular security because no named plaintiff had purchased that particular security and thus lacked standing to sue on behalf of those who did).[11]

Plaintiffs McCabe and Clark released their state law claims. The Court should dismiss their individual state law claims and dismiss them as the class representatives for the North Dakota, Pennsylvania, and Ohio state law classes. Since Clark is the sole class representative for the North Dakota state law class, upon his dismissal as the class representative, the North Dakota state law class claims should be dismissed for lack of a class representative. Any remaining Rule 23 state law classes should be dismissed to the extent they seek to assert claims on behalf of FST employees who have released these claims, or else Plaintiffs should be ordered to amend the state law class definitions to exclude FST employees who have executed releases.

### 3. Under Texas Law, The Severance Agreement Released The State Law Overtime Claims Of McCabe, Clark, And Any Other FST Who Signed It.

The severance agreements expressly state that they "shall be governed by and interpreted

---

[10] *See also, e.g., Narouz v. Charter Commc'ns, LLC,* 591 F.3d 1261, 1264 (9th Cir. 2010) ("to retain...a 'personal stake,' a class representative cannot release any and all interests he or she may have had in class representation through a private settlement agreement"); *Hawkins v. Comparet–Cassani,* 251 F.3d 1230, 1238 (9th Cir. 2001) ("A named plaintiff cannot represent a class alleging [ ] claims that the named plaintiff does not have standing to raise.").

[11] Also, the court may also order plaintiffs to clarify class definitions and identify class representatives with standing for each class. *Keepseagle v. Veneman*, 2001 WL 34676944 (D.D.C. Dec. 21, 2001) (ordering plaintiffs to define subclasses and identify subclass representatives who each have standing to raise their respective subclass claims).

under the laws of the State of Texas without regard to Conflict of Laws." (Dkt. 55-1, ¶ 13.) Therefore, Texas law determines the scope and enforceability of this release, including whether the release of state overtime claims is "prevented by law." *Budge v. Post*, 643 F.2d 372, 374, n.1 (5th Cir. 1981) ("Texas choice-of-law rules provide that if the parties have expressly agreed that the contract is to be governed by the law of a particular state, that intention prevails); *Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004) ("In Texas, contractual choice-of-law provisions are typically enforced.").

Texas law does not prohibit the release of employment claims in any way, and, in fact, has a strong policy favoring enforcement of releases. *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994) ("Public policy favors voluntary settlement of claims and enforcement of releases."); *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 373 (5th Cir. 2002) ("a general release of 'any and all' claims applies to all possible causes of action"); *Gen. Agents Ins. Co. of Am., Inc. v. El Naggar*, 340 S.W.3d 552, 558 (Tex. App. 2011) ("In general, Texas law favors voluntary settlement of disputes and, thus, will give a properly executed release legal force.").[12] Thus, Texas broadly enforces releases, including in employment agreements. *Nail v. Brazoria Cnty. Drainage Dist. No. 4*, 992 F. Supp. 921, 925 (S.D. Tex. 1998), *aff'd*, 176 F.3d 480 (5th Cir. 1999) (release of "any and all claims or demands of any kind… arising out of any matter or event occurring contemporaneously with or subsequent to [plaintiff's] inception of employment" includes a release of "any state law claims he might have"); *Kalyanaram v. Burck*, 225 S.W.3d 291, 297-99 (Tex. App. 2006) (enforcing general release, "including, but not limited to any claim arising from [plaintiff's] relationship with or employment by the [defendants]").

---

[12] *See also, e.g., CIC Prop. Owners v. Marsh USA Inc.*, 460 F.3d 670 (5th Cir. 2006) (under Texas law, broad release of claims is enforceable); *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990) ("[u]nder Texas law, a release is a contract").

The severance agreement "waives, releases, acquits, and forever discharges Newpark… of and from all claims… arising from or in any way connected with or related to Employee's employment" and advised that this release "may impact your rights under certain state wage laws" and non-FLSA overtime claims were released "unless prevented by law." (Dkt. 55-1, ¶¶ 4-5.) It advises them to "consult an attorney before executing this Agreement." (*Id.*, ¶ 8.) The cover note identified Plaintiffs' counsel and their address, phone and fax numbers, and email addresses. (Dkt. 55-2.) Therefore, under Texas law, the releases are valid and binding and fully released McCabe's, Clark's, and other releasees' state law overtime claims.

### 4. New York, Pennsylvania, Ohio, And North Dakota Law Also Enforce Broad Releases Of Claims Reached Through Private Settlement.

The release agreement states that non-FLSA overtime claims are released "unless prevented by law." (Dkt. 55-1, ¶ 5.) Nothing in the Rule 23 states at issue ***prevents*** releases of state overtime claims. All expressly or implicitly enforce releases of state overtime claims.

Courts are clear that overtime claims asserted under New York law may be released by private settlements. *Hummel v. AstraZeneca LP*, 575 F. Supp. 2d 568, 570 (S.D.N.Y. 2008) ("Agreements that purportedly release employers from liability for claims arising under the New York Labor Law overtime requirements are generally valid and enforceable.")[13] State law overtime claims in Pennsylvania can be released too. *Lignore v. Hosp. Univ. of Pennsylvania*, 2006 WL 1804571, at *3 (E.D. Pa. June 28, 2006) (dismissing overtime claim under PA law where plaintiff signed an enforceable, pre-litigation release of overtime claims).[14]

---

[13] *See also DeFilippo v. Barclays Capital, Inc.*, 552 F. Supp. 2d 417, 426-27 (S.D.N.Y. 2008) (severance agreement releasing employer from New York overtime requirements is enforceable); *Simel v. JP Morgan Chase*, 2007 WL 809689, at *5-6 (S.D.N.Y. Mar. 29, 2007) (upholding private settlement agreement releasing overtime claims asserted under New York law).

[14] *See also Sears, Roebuck & Co. v. Jardel Co.*, 421 F.2d 1048, 1051 (3d Cir. 1970) (under Pennsylvania law, "[a] general release… will ordinarily be enforced absent a showing that the parties did not intend what they wrote"); *Ginaldi v. O'Brien*, 2015 WL 5316439, at *5 (E.D. Pa.

Nothing in Ohio or North Dakota statutes or case law prohibits parties from contractually releasing state law overtime claims. In fact, both states fully enforce broad form settlement agreements such as this.[15] To deprive Newpark of these releases would be to strip it of a benefit it obtained through valuable consideration, particularly given that it had negotiated the broad release of state overtime claims "unless prevented by law."[16] Moreover, federal courts have limited jurisdiction, and it is not their function to expand the existing scope of state law, nor create claims, rights, or defenses that the state legislatures and courts have not themselves created or recognized.[17] Because Ohio and North Dakota legislatures and courts have not prohibited employees from releasing their state overtime claims, this Court should avoid doing so itself.

---

Sept. 11, 2015) ("it is in the public interest to enforce clear and unambiguous waivers"); *Restifo v. McDonald*, 230 A.2d 199, 202 (Pa. 1967) ("where the terms of a release and the facts and circumstances existing at the time of its execution indicate the parties had in mind a general settlement of accounts, the release will be given effect according to its terms").

[15] *Stewart v. FirstEnergy Corp.*, 2006 WL 840369, at *7 (N.D. Ohio Mar. 29, 2006) ("employers and employees may negotiate valid releases of various types of employment-related claims under a variety of circumstances, including those in severance packages"); *Lewis v. Mathes*, 829 N.E.2d 318, 322 (Ohio App. 2005) ("A release is a contract that is favored by the law to encourage the private resolution of disputes. A release of a cause of action ordinarily acts as an absolute bar to any later action on any claim encompassed within the release.") (citations omitted); *Kraft v. Johanns*, 2006 WL 2583326, at *15 (D.N.D. May 3, 2006) (in North Dakota, "[p]ublic policy favors the enforcement of settlement agreements containing release language that is unambiguous"), *quoting Joe v. First Bank Sys., Inc.*, 202 F.3d 1067, 1070 (8th Cir. 2000); *Hastings Pork v. Johanneson*, 335 N.W.2d 802, 805 (N.D. 1983) ("When a settlement agreement is fairly entered into, it disposes of all disputed matters.").

[16] *Stewart*, 2006 WL 840369, at *7 (enforcing severance agreement containing a broad release that had been reviewed and approved by a court in part because a finding to the contrary "certainly would produce an inequitable result as to the [employer]" that paid out a significant aggregate sum to obtain broad releases from terminated employees in connection with layoffs).

[17] *See, e.g., TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 361 (5th Cir. 2008) ("We will not expand state law beyond its presently existing boundaries"); *City of Philadelphia. v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002) ("[I]t is not the role of a federal court to expand state law in ways not foreshadowed by state precedent."); *Great Cent. Ins. Co. v. Ins. Servs. Office, Inc.*, 74 F.3d 778, 786 (7th Cir. 1996) ("a plaintiff who needs a common law departure or innovation [of state law] to win should bring his suit in state court rather than in federal court.").

Because McCabe and Clark released their state overtime claims, this Court should dismiss their state law claims asserted individually and on behalf of Rule 23 state law classes for lack of jurisdiction, dismiss them as state law class representatives, and dismiss the North Dakota state law class for lack of a class representative. Class members who executed releases should also be dismissed or excluded.

**C.** **New State Overtime Claims Do Not Relate Back To The Original FLSA Complaint, And Tolling Of State Claims Should Begin From The Filing Of The FAC.**

Claims barred by the SOL on the face of the complaint should be dismissed for failure to state a claim. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.") (citations omitted). When deciding a partial 12(b)(6) motion, courts dismiss part of a claim and sustain the remainder of the claim. *See Garner v. Gutierrez*, 2013 WL 754105, at *2 (S.D. Tex. Feb. 27, 2013) (dismissing prisoner's excessive force claim to the extent it was based on incident allegedly occurring in a hallway, and sustaining that claim to the extent it was based on incident allegedly involving forced shaving).[18]

The SOL on state law overtime claims is 6 years in New York, 3 years in Pennsylvania, and 2 years in Ohio and North Dakota. N.Y. Lab. Law § 663(3); 43 Pa. Cons. Stat. § 260.9a(g); Ohio Rev. Code § 2305.11; N.D. Cent. Code § 34-01-13; *see* Dkt. 123, ¶ 16(a)-(d). The SOL should run from when the FAC was filed on November 3, 2015, so any New York claims before November 3, 2009, any Pennsylvania claims before November 3, 2012, and any Ohio and North Dakota claims before November 3, 2013 are time barred.

---

[18]  *See also, Paramount Fin. Commc'ns, Inc. v. Broadridge Inv'r Commc'n Sols., Inc.*, 2015 WL 4093932, at *5 (E.D. Pa. July 7, 2015) (dismissing fraud/fraudulent inducement claim to the extent it relates to a marketing agreement and sustaining that claim to the extent it relates to a stock purchase agreement).

1.      **Rule 15(c)'s Relation Back Standard.**

An amendment relates back to the filing date of the original complaint when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). But "when new or distinct conduct, transactions, or occurrences are alleged as grounds for recovery, there is no relation back." *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985). To determine whether an amendment relates back, the "critical" inquiry is "whether the opposing party was put on notice regarding the claim raised [by the amendment]." *Id.* Rule 15 does not address the situation where, as here, entirely new plaintiffs join a lawsuit with entirely new causes of action that the original plaintiff could not assert.[19]

2.      **The State Overtime Claims Are New And Distinct From The Original FLSA Claim And Do Not Arise Out Of The Same Conduct, Transaction, Or Occurrence Alleged In The Original Complaint.**

The new state law claims are distinct from and go beyond the "conduct, occurrence, or transaction" set out in the original Complaint. The Complaint does not set forth any claims based on any state laws or indicate that Davida would amend and add new plaintiffs asserting new claims under New York, Pennsylvania, Ohio, or North Dakota law. The new state law claims asserted by the three new Plaintiffs are based on their individual work experiences, and thus involve separate and distinct conduct, transactions, and occurrences for each of them. Even if there is some overlap of alleged facts, "relation-back is improper when the amendments concern new and distinct claims, even though they may arise from the same general occurrence or injury." *Hamilton v. O'Connor Chevrolet, Inc.*, 2003 WL 22953337, at *3 (N.D. Ill. Dec. 12, 2003). The FAC adds four new state law causes of action that Davida did not assert and never had standing to assert because he never worked for Newpark in any of these states. These new

---

[19]    Davida only worked for Newpark in Texas. (Dkt. 43-3, Davida Depo., 158:5-8.)

state claims cannot relate back because they did not previously exist in this suit and no named plaintiff previously had standing to assert them.  *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 51-52 (E.D.N.Y., Mar. 27, 2015).

> ### 3. Plaintiffs Should Not Be Permitted To Use Relation Back To Gain An Advantage That They Cannot Obtain For FLSA Opt-ins And Exploit Differences Between FLSA Opt-in Collective Actions And Rule 23 Opt-out Class Actions To Gain Additional Tolling Of The Statute Of Limitations.

The issue here is whether the look-back period for the state law claims is based on the date of the original Complaint (as Plaintiffs contend) or the date of the FAC (as Newpark contends).[20]  Even if the new claims arise from the same conduct, relation back should not apply here where new parties are added.[21]

Rule 23 class actions differ from FLSA collective actions in certain ways.[22]  One is critical here.  In Rule 23 class actions, SOL are tolled for absent class members upon the filing of the Rule 23 class action.  *American Pipe & Constr. v. Utah,* 414 U.S. 538, 552-53 (1974).  In FLSA collective actions, the SOL continues to run for all collective action members and only is tolled once they affirmatively file their opt-in consent.  *Castillo v. Hernandez,* 2010 WL

---

[20]  *Compare Hamilton,* 2003 WL 22953337, at *3 ("An amended complaint that relates back to the original complaint is deemed to be filed on the date the original complaint was filed for purposes of tolling the statute of limitations.") *with Dillard v. Vicksburg Med. Ctr., Inc.*, 695 F. Supp. 880, 883 (S.D. Miss. 1988) ("an amendment adding a new cause of action will not relate back to the date of the original complaint but will be governed by its own date as regards the statute of limitations").

[21]  *See, e.g.*, *Asher v. Unarco Material Handling, Inc.,* 596 F.3d 313, 317-18 (6th Cir. 2010).  In *Asher*, plaintiffs alleging injuries caused by carbon monoxide gas exposure filed their claims within the SOL, and then sought to amend to add 33 new plaintiffs alleging injuries from the same gas exposure but who did not file their claims within the applicable SOL.  *Id.* at 315.  Recognizing that "Rule 15(c)(1)(B) allows relation back of an amendment asserting a 'claim or defense,' but [] does not authorize the relation back of an amendment adding a new *party*," the court rejected the new plaintiffs' attempt to "ride piggyback on the claims of timely plaintiffs." *Id.* at 318 (emphasis in original).

[22]  This difference between class actions under Rule 23 and collective actions under § 216(b) is "fundamental [and] irreconcilable," as under the latter "no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively 'opted into' the class."  *LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975).

4595811, at *8 (W.D. Tex. Nov. 4, 2010); *see* 29 U.S.C. § 256.  The SOL on an FLSA collective

action is not subject to *American Pipe* tolling.  *Id.*

In *Charlot*, the court recognized these inherent differences and that plaintiffs could

exploit the tolling differences between class actions and FLSA collective actions.  *Charlot,* 97 F.

Supp. 3d at 49.  The court identified the perverse situation that would arise if plaintiffs' relation

back theory were adopted:

> The Named Plaintiffs would use the FLSA—a statute which does not allow
> tolling based on the filing of the original Complaint—to provide notice
> sufficient to allow the relation back of class members' claims under state
> wage-and-hour laws. Furthermore, in contrast to the tolling rules applicable to
> FLSA collective actions, the statute of limitations for potential state law class
> claims is tolled by the filing of the class claim.  Under the Named Plaintiffs'
> reasoning, this tolling would occur even earlier, so that a state wage-and-hour
> class claim would be tolled by the filing of an FLSA collective action. […]
> **The practical import would be to give plaintiff and counsel control of all**
> **wage-and-hour claims against an employer over an extended period of**
> **time without providing the employer with any details of the employees'**
> **employment, not their names, positions, locations or dates of**
> **employment.** *Id.* at 73-74 (emphasis added).

Accepting Plaintiffs' relation back argument would allow them to shoehorn *American*

*Pipe* Rule 23 tolling into what started as a FLSA opt-in action and end-run the express provisions

of the FLSA providing that tolling does not occur until an individual's opt-in consent form is

filed.  Permitting relation back would extend the new Plaintiffs' individual state claims by more

than *seven months* (they each opted in March 2015, Dkt. 67, 72, 74) and add *15 months* to the

state claims of putative class members who declined  to join in the FLSA action, thus putting

Rule 23 state putative class members who did *not* opt-in in a better position than individuals who

did opt in.  It also requires an employer to start analyzing potential liability under the state laws

of every state in which the employer operates *immediately* upon the filing of an FLSA action—

before any individual "has stepped forward as a plaintiff to show that there is a plaintiff with

standing to raise the challenge and force the defendant to consider its liability."  *Id.* at 73.

### 4. Newpark Had No Notice As To Whether And Which State Law Classes Plaintiffs Would Seek To Add Until They Filed Their Motion To Amend.

The Supreme Court has long recognized that the "policies of ensuring essential fairness to defendants and of barring a plaintiff who 'has slept on his rights' are satisfied when… a named plaintiff who is found to be representative of a class commences a suit and thereby ***notifies defendants not only of the substantive claims*** being brought against them, but also of ***the number and generic identities of the potential plaintiffs*** who may participate in the judgment." *American Pipe*, 414 U.S. at 554-55.

Davida ***never*** provided Newpark with any notice of which putative state law classes he would seek to add until he filed his motion to amend on September 23, 2015. Davida never alleged or suggested in his Complaint any claims or facts surrounding the new four state law claims sought to added; he never asserted a state overtime claim; he never had standing to assert any. (Dkt. 1.) Clark, MacDougall, and McCabe did not do anything to "step forward" as state law class representatives until filing their motion to amend[23], even though they each opted in much earlier this year in March, 2015. (Dkt. 67, 72, 74.) Their opt-in consent forms referred only to the FLSA action, and they waited 6 months and until the very last possible day to amend. While Plaintiffs could certainly choose to wait until the last day to amend, they also chose not to give earlier notice to Newpark of which specific states and state law claims they intended to add. Without knowing which state law classes Plaintiffs would seek to add, Newpark had no clarity as to the substantive state wage and hour claims, the putative state law class sizes and numbers, or the identities of putative state class members. Newpark did not have any meaningful opportunity to prepare to defend against these unforeseen, new claims and plaintiffs, which will require new

---

[23] The proposed FAC attached to Plaintiffs' motion to amend has Octavio Sowerwine as the North Dakota class representative. (Dkt. 106-1.) But the current and now operative FAC replaces Sowerwine with Clark as the North Dakota class representative. (Dkt. 123.) Newpark did not have notice about this substitution until the FAC was filed.

discovery, new depositions, and new defenses.

Under such circumstances, courts have correctly found that later added state law wage claims do not relate back to the filing of an original FLSA complaint. In *Charlot*, plaintiffs in a misclassification action moved for leave to amend their complaint to add new plaintiffs asserting individual and representative claims under the wage and hour laws of four additional states that the original plaintiffs did not allege—and did not have the standing to assert—and to have those new claims relate back to the date of the original complaint. 97 F. Supp. 3d at 45. Plaintiffs argued that the employer received notice of the new proposed Illinois, North Carolina, Pennsylvania, and Washington overtime claims because they stemmed from the same conduct at issue in the original complaint, which asserted overtime claims under the FLSA and New York and New Jersey wage and hour laws. *Id.* at 59-60.

The *Charlot* court recognized that state law standards "vary such that a defendant facing multi-state claims must analyze its scope of liability **under each state law separately and independently of its analysis under the FLSA**," and that "plaintiffs wishing to rely on relation back must bear some responsibility to define the scope of the action they are bringing, so that defendants may properly evaluate and respond to such claims." *Id.* at 53 (emphasis added). Thus, where "the number and identities and the various state law classes subject to different statutory requirements were not identified in the original complaint, **fair notice to defendant [is] lacking**." *Id.* at 56 (emphasis added). Otherwise, without fair notice, plaintiffs would be unfairly "permitted to stop the clock on all state law wage-and-hour claims possibly brought against an employer in multiple states by filing a single FLSA collective action, as long as they were later able to identify plaintiffs in other states." *Id.* at 54.

Because the newly alleged state causes of action and plaintiff-specific allegations of

wrongdoing alter and expand the scope of the case, relation back is not appropriate. Other courts concur with such an outcome.[24] *Randolph v. Centene Management Company, LLC* does **not** overcome this weight of authority. 2015 WL 5794326 (W.D. Wash. Oct. 5, 2015). There, the court merely recited Rule 15 and, in a five sentence paragraph lacking any analysis, concluded that newly added state law claims relate back. Unlike Davida, the original plaintiff did assert state law claims in the original complaint, and the amended complaint just added additional state law claims. *Randolph* is inapposite, and the Court should follow *Charlot*.

Because Plaintiffs failed to provide Newpark with the requisite "critical" notice, relation back of the new claims to the date of the original Complaint should be rejected and the state overtime claims should be dismissed to the extent they are asserted for time periods before November 3, 2009 in New York, November 3, 2012 in Pennsylvania, and November 3, 2013 in Ohio and North Dakota.

## IV. CONCLUSION

For the foregoing reasons, Newpark requests that the Court grant Newpark the relief requested above and all other relief, both in law and in equity, to which it is entitled.

---

[24] *See e.g., Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1132-33 (11th Cir. 2004) (affirming finding that plaintiff asserting class claims on behalf of Florida residents did not provide adequate notice to defendant of proposed claims on behalf of national class for relation back); *Feuerstack v. Weiner*, 2013 WL 3949234, at *4 (D.N.J. July 30, 2013) (denying relation back where original complaint alleging New Jersey class claim did not put defendant on notice of proposed nationwide class); *Midland Funding LLC v. Brent*, 2010 WL 703066, at *3 (N.D. Ohio Feb. 22, 2010) (denying relation back where original complaint alleging Ohio class claim did not put defendant on notice of proposed nationwide class); *Espinosa v. Delgado Travel Agency, Inc.*, 2006 U.S. Dist. LEXIS 71085, at *15 (S.D.N.Y. Sept. 27, 2006) (no relation back to original complaint where the amendments involved "new claims and factual allegations by dozens of new plaintiffs, and where defendant did not have notice that such claims would be brought"); *Senterfitt v. SunTrust Mortg., Inc.*, 385 F. Supp. 2d 1377, 1380 (S.D. Ga. 2005) (amended complaint did not relate back because prior pleadings did not adequately put defendant on notice of a significantly larger class); *Anderson v. City of Wood Dale, IL*, 1995 WL 106318, at *3 (N.D. Ill. March 9, 1995) ("a defendant is entitled to notice of the existence and involvement of new plaintiffs").

Dated:  November 23, 2015

<div style="margin-left:40%">

/s/ Joan B. Tucker Fife
JOAN B. TUCKER FIFE (admitted *pro hac vice*)
jfife@winston.com
EMILY C. SCHUMAN (admitted *pro hac vice*)
eschuman@winston.com
Winston & Strawn LLP
101 California Street, Suite 3900
San Francisco, CA 94111
Telephone:      (415) 591-1000
Facsimile:      (415) 591-1400

JASON W. BILLECK
Texas Bar No. 24001740
jbilleck@winston.com
WINSTON & STRAWN LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242
Telephone:      (713) 651-2600
Facsimile:      (713) 651-2700

**ATTORNEYS FOR DEFENDANT**
**NEWPARK DRILLING FLUIDS, LLC**

</div>

## CERTIFICATE OF CONFERENCE

I conferred with Plaintiffs' counsel, and Plaintiffs oppose this motion.

*/s/ Joan B. Tucker Fife*
Jason W. Billeck

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system on November 23, 2015 in compliance with CV-5(b).

*/s/ Joan B. Tucker Fife*