# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| JESSE DAVIDA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NEWPARK DRILLING FLUIDS, LLC, <br><br> Defendant. | Civil Action No. 5:14-cv-552-HJB <br><br> **Collective Action** |

## PLAINTIFFS' RESPONSE TO NEWPARK'S MOTION TO DISMISS

**1. SUMMARY.**

This Court has jurisdiction over Plaintiffs' state law overtime claims under the Class Action Fairness Act (CAFA) because Newpark's own evidence defeats the only exception to jurisdiction it raises. Further, because Plaintiffs' state law claims unquestionably arise from a common nucleus of operative facts, this Court has supplemental jurisdiction.

Newpark's attempt to dismiss Plaintiffs' state claims under Rule 12(b)(1) is procedurally improper. Newpark's alleged releases do not implicate this Court power to adjudicate the case, *i.e.*, its subject matter jurisdiction, but merely present the Newpark with an opportunity to raise affirmative defenses which could be resolved. If Newpark raises these defenses in an answer (remember, it hasn't answered the amended complaint yet) and files a proper motion under Rule 56, Plaintiffs will duly respond. After all, even under Newpark's version of events, Plaintiffs are entitled to demonstrate these affirmative defenses will fail (and they will).

Finally, Plaintiffs' amended complaint should relate back to the filing of this case. From the very start, Newpark has been on notice that its exemption policy denied all of the Fluid Service Technicians the overtime pay to which they are entitled under the law. In short, Newpark's motion should be denied.

1

**2. BACKGROUND.**

Back in June, the parties and the Court discussed at length Plaintiffs' plan to amend their complaint (Docket Entry 97). Plaintiffs stated their intention to add claims under certain state laws that provide remedies and rights in addition to those afforded by the FLSA. *Id.* In response, Newpark argued that certain dates proposed by Plaintiffs were too short to accommodate the discovery necessary for these claims. Therefore, Newpark requested – for example – a longer discovery period in the event the Court granted Plaintiffs' request. *Id.* The Court ultimately gave each party some of what they wanted (Docket Entry 98). Shortly thereafter, Newpark told its shareholders: "The Court has given the plaintiffs' attorneys until September [23] 2015 to add state law claims to the litigation (if any)." See Newpark Resources, Inc., Quarterly Report Form (Form 10-Q) at 11 (July 31, 2015).

Plaintiffs filed their motion to amend in September and Newpark unsuccessfully opposed it (Docket Entry 122). This Court nonetheless gave Newpark permission to file motions to dismiss based on the "standing and relation-back issues set out in Newpark's opposition" to Plaintiffs' motion for leave to amend. *Id.* at 2, ¶ 2. Despite the Court's guidance, most of the issues raised in Newpark's motion to dismiss bear little resemblance to the issues raised in its opposition to Plaintiffs' motion for leave to amend (*compare* Docket Entry 107 *with* 141). Instead, Newpark spends a significant amount of time attempting to insert issues raised by the Court at the hearing on the motion to amend (Docket Entry 121). Newpark's arguments (new and old) fail.

**3. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THE STATE LAW CLAIMS.**

**A. This Court has Jurisdiction under the Class Action Fairness Act.**

The Class Action Fairness Act (CAFA) "greatly expands federal jurisdiction over interstate class action lawsuits." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 569 (5th Cir. 2011). Newpark's only argument against CAFA jurisdiction is that "there are fewer than 100 state law class members" (Docket Entry 141 at 1). But CAFA requires only that "the number of members of **all** proposed plaintiff class**es** in the **aggregate**" exceed 100. 28 U.S.C. § 1332(d)(5)(B) (emphasis added). And it defines members of

each class as "the persons (named or unnamed) who fall within the definition of the proposed or certified class." *Id.* at § 1332(d)(1)(D). So, to determine the aggregate number of class members in all the proposed classes, the Court simply counts the number of class members in each proposed class, adds them together, and determines if the total "in the aggregate" exceeds 100. 28 U.S.C. § 1332(d)(5)(B).

That question is typically "evaluated on the basis of the pleadings." *Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*, 481 F. App'x 622, 625 (2d Cir. 2012) (presence of at least 100 class members determined by reference to the complaint); *Brown v. Mortgage Elec. Registration Sys., Inc.*, 738 F.3d 926, 932 (8th Cir. 2013) (same). If contested, the party opposing jurisdiction – in this case, Newpark - bears the burden of proof. *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006); *Broquet v. Microsoft Corp.*, No. CIV. CC-08-094, 2008 WL 2965074, at *1 (S.D. Tex. July 30, 2008) (Because the requirement of an aggregate of 100 class members is an "exception to CAFA" jurisdiction, the "party disputing federal jurisdiction bears the burden of demonstrating that the action is within this exception.").[1] In deciding the issue, the "[j]urisdictional determinations should be made largely on the basis of readily available information." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 570 (5th Cir. 2011) (internal quotes and citations omitted).[2]

The First Amended Complaint alleges the aggregate number of all the proposed class members is "greater than 100," with "at least 30" in the New York Class, "at least 42" in the proposed North Dakota Class, "at least 40" in the proposed Ohio Class, and "at least 48" in the Pennsylvania Class (for a total of more than 160 class members) (Docket Entry 123 at ¶¶ 5, 95-99). This yields a plausible claim of at least 100 class members in the aggregate (Docket Entry 123 at ¶¶ 97-99). In fact, Newpark didn't say boo about jurisdiction until after this Court asked about it.

---

[1] *DeHart v. BP Am., Inc.*, No. 09 CV 0626, 2010 WL 231744, at *9 (W.D. La. Jan. 14, 2010) (same).
[2] The "court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction." *Id.* at 570-71.

Although it (now) suggests Plaintiffs' cannot meet CAFA's numerosity requirement, Newpark's statements regarding the New York and Ohio classes,[3] as well as the North Dakota and Pennsylvania classes,[4] confirm there are at least 100 members of the proposed plaintiff classes in the aggregate:

| Newpark's Statements Regarding Class Sizes | | | |
|---|---|---|---|
| State | Number | Source | *Notes |
| New York | 4* | Newpark HR Director Declaration (Docket Entry 114-1) | Uses truncated statute of limitations |
| North Dakota | 42* | Newpark Resources, Inc., Quarterly Report (10-Q) (September 30, 2015) | Excludes opt-in plaintiffs |
| Ohio | 23 | Newpark HR Director Declaration (Docket Entry 114-1) | |
| Pennsylvania | 48* | Newpark Resources, Inc., Quarterly Report (10-Q) (September 30, 2015) | Excludes opt-in plaintiffs |
| Total | 117 | | |

Of course, Newpark's attempt to exclude current opt-ins when counting the members of various classes[5] cannot stand in light of CAFA's definition of "class member," 28 U.S.C. § 1332(d)(1)(D), or established precedent holding that workers may be members of both an FLSA collective action and a Rule 23 state law class. *Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971, 978 (7th Cir. 2011). Moreover, Congress "explicitly said" the "numerosity requirement in CAFA [could] be satisfied by counting unnamed parties in interest in addition to named plaintiffs[.]" *AU Optronics Corp.*, 134 S. Ct. at 742 (emphasis). Therefore, the opt-in plaintiffs who worked in North Dakota and Pennsylvania must be added back into the mix, raising the aggregate number of class members in all of the proposed classes jumps to at least 134 (and 139 if the Ohio opt-ins were excluded from Newpark's count). *See* Exhibit 1, Declaration of Matthew Parmet at ¶ 3.

---

[3] Newpark's Human Resource Director told this Court the New York and Ohio Classes contain 27 class members (Docket Entry 114-1 at ¶ 7).

[4] Newpark certified to its investors that "the effect of the amendment (**excluding** New York and Ohio claims) will be to include in the litigation approximately 48 … fluid services technicians who worked in Pennsylvania … **and** approximately 42 … fluid services technicians who worked in North Dakota **that have not opted into the pending litigation**." *See* Exhibit __, excerpt from Newpark Resources, Inc., Quarterly Report (10-Q) (September 30, 2015) at 12 (emphasis added), available at: http://www.newpark.com/interests/investors/information-and-reports/sec-filings

[5] *See* n. 4, *supra*.

4

Given this record, the conclusory declaration submitted by Newpark HR Director Brian Coyle cannot carry Newpark's burden to establish the exception to CAFA jurisdiction. First, Mr. Coyle's statements are based *solely* on his review of Newpark's Oracle system (Docket Entry 141-4). Second, Mr. Coyle's declaration uses an unquantified estimate ("very few") and a truncated limitations period to estimate the number of New York Class members. *Id.* Third, Mr. Coyle's declaration in notably circumspect about the information it provides. For example, in opposing leave to amend, Mr. Coyle claimed "no more than 23 Newpark employee FSTs … were assigned to a work location **or performed work in Ohio**" (Docket Entry 114-1 at ¶ 7) (emphasis added).[6] In contrast, Mr. Coyle's latest declaration omits "or performed work" when discussing the number of employees in New York, Pennsylvania, Ohio, and North Dakota (Docket Entry 141-4 at 6).[7] Finally, and decisively, Mr. Coyle fails to count "the number of members of all proposed plaintiff classes in the aggregate[,]" 28 U.S.C. § 1332(d)(5)(B), a number which is demonstrably equal to at least 100. The Court has CAFA jurisdiction.

### B.  The Court has Supplemental Jurisdiction over the State Law Claims.

In a  ham-fisted effort to game the Court's academic interest at the prior hearing, Newpark now suggests the Court should decline supplemental jurisdiction over Plaintiffs' state law claims suggesting: (1) they would predominate over the FLSA claims; and (2) would just be too much work for the Court (Docket Entry 141 at 6-9). Because Newpark did not raise these issues before (Docket Entry 114), it shouldn't be permitted to do so now (Docket Entry 122). That said, even on the "merits," Newpark's arguments fail.

---

[6] Even if the Court excluded members of the New York class, the 23 class members in Ohio would clearly count for CAFA jurisdiction. Indeed, in passing CAFA, Congress noted "a purported class action may involve as few as 21 class members." S. REP. 109-14, 96, 2005 U.S.C.C.A.N. 3, at n. 127.

[7] This is not to suggest Newpark doesn't have records of where its Fluid Techs actually worked, because it does. In fact, these records are some of the records sought in Plaintiffs' motion to compel (Docket Entry 124).

5

In fact, Judge Xavier Rodriguez explained: "The circuit courts addressing supplemental jurisdiction in FLSA cases unanimously hold that when 'the state law claims essentially replicate the FLSA claims—they plainly do not predominate.'" *McLeland v. 1845 Oil Field Servs.*, 97 F. Supp. 3d 855, 865 (W.D. Tex. 2015) (quoting *Ervin v. OS Rest. Servs., Inc.,* 632 F.3d 971, 980 (7th Cir.2011) (quoting *Lindsay v. Government Employees Ins. Co.,* 448 F.3d 416, 425 (D.C.Cir.2006)); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.,* 659 F.3d 234, 246 (2d Cir.2011) ("In adjudicating the federal claims, the District Court likely will determine whether the Plaintiffs were tip-eligible under the FLSA. Because the FLSA and the [state statute] use a similar standard for making such a determination, and because each set of claims arise from the same set of operative facts," the state claims do no predominate). Thus, Newpark's predominance argument fails. *Id.*

And despite Newpark's suggestion to the contrary, "the discrepancies between the Rule 23 and FLSA opt in/opt-out procedures present 'compelling reasons' to decline jurisdiction." *Brickey v. Dolencorp, Inc.*, 244 F.R.D. 176, 179 (W.D.N.Y. 2007). "Rule 23 and FLSA actions are routinely prosecuted together, and the complexities of Rule 23 and FLSA hybrid actions are a challenge that the federal judiciary, and properly instructed juries, are generally well-equipped to meet." *Id.* (citing *Lindsay v. Government Employees Ins. Co.,* 448 F.3d 416 (D.C.Cir.2006)). If the state law claims are dismissed, "[p]laintiffs are free to pursue their state law claims, including potential class claims, in the state courts." *De Luna-Guerrero v. North Carolina Grower's Ass'n, Inc.*, 338 F.Supp.2d 649, 653 (E.D.N.C. 2004); *see also*, *Neary v. Metropolitan Prop. & Cas. Ins. Co.*, 472 F.Supp.2d 247, 253 (D.Conn. Feb. 8, 2007). So "successful" motions to dismiss state law class allegations create multiple lawsuits out of one with the attendant possibility for, *inter alia*, "overlapping, uncoordinated discovery; differing rulings by multiple courts with respect to discovery, relevance and privilege; differing and conflicting rulings on issues of both procedure and substance; collateral estoppel issues with respect to interlocutory rulings[.]" *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 96 (S.D.N.Y. 2001). The Court should not create 5 lawsuits out of one by declining supplemental jurisdiction.

## 4. NEWPARK'S RULE 12(B)(1) MOTION IS IMPROPER.

"When an employer believes an employee executed a valid waiver, it should raise the waiver defense through a Rule 12(b)(6) motion rather than a Rule 12(b)(1) motion." *Flores v. ACT Event Servs., Inc.*, No. 3:14-CV-2412-G, 2015 WL 567960, at *2 (N.D. Tex. Feb. 11, 2015).[8] Of course, a "Rule 12(b)(6) motion is not appropriate in all cases." *Id.* at n. 6. "To present a waiver defense, defendants generally must attach relevant documents to their motion to dismiss." *Id.* "If the complaint does not reference these specific documents, or at least the relevant DOJ settlement, then the court cannot consider these documents when ruling on a Rule 12(b)(6) motion." *Id.* (citing *In re Katrina Canal Breaches Litigation,* 495 F.3d 191, 205 (5th Cir.2007) (stating that for a court to consider documents attached to a motion to dismiss, the documents must be mentioned in the complaint and central to the plaintiff's claims), *cert. denied,* 552 U.S. 1182 (2008)). "In such a case, the defendant should file a Rule 56 summary judgment motion to assert the waiver defense." *Id.*; *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (a motion under Rule 12(b)(1) is not an appropriate substitute for a motion for summary judgment under Rule 56).

All this makes perfect sense because Rule 12(b)(1) addresses the Court's subject matter jurisdiction which, of course, cannot be waived. In contrast, "accord and satisfaction," "release," and "waiver," which are merely affirmative defenses that can be waived. *See* FRCP 8(c)(1).

## 5. PLAINTIFFS HAVE GROUNDS TO CONTEST THE ENFORCEABILITY OF THE RELEASES (IF NEPARK PLEADS SUCH A DEFENSE AND FILES A MOTION FOR SUMMARY JUDGMENT).

Newpark argues McCabe and Clark released certain state law overtime claims in their severance agreement. They didn't. Indeed, they couldn't.

---

[8] In fact, the only Texas decision Newpark cites on this issue isn't a Rule 12(b)(1) decision at all, but rather a decision under Rule 12(b)(6).

Judge Easterbrook correctly observed that when a law "makes it impossible to agree on the amount of pay, it is necessary to ban private settlements of disputes about pay." *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). "Otherwise the parties' ability to settle disputes would allow them to establish sub-minimum wages." *Id.* And, in fact, Ohio law prohibits such an agreement. "No employer shall pay or agree to pay wages at a rate less than the rate applicable under Sections 4111.01 to 4111.17 of the Revised Code." Ohio Revised Code § 4111.13(C). Similarly, Pennsylvania law mandates that "any agreement between the employer and the worker to work for less than such minimum wage shall be no defense to such action." 43 Pa. Stat. Ann. § 333.113.

Supreme Court precedent supports a prohibition on the waiver of overtime claims. Employees' rights to minimum wage and overtime under the FLSA may not be waived or abridged by contract. *Barrentine v. Ark.-Best Freight Sys., Inc.,* 450 U.S. 728 (1981) (citing, inter alia, *Brooklyn Sav. v. O'Neil,* 324 U.S. 697 (1945)); *Allen,* 724 F.2d at 1135 ("an employee's right to a minimum wage per hour or overtime pay for hours over forty hours a week is not subject to waiver by the employee"). This is because FLSA rights are both private and public; one employee's waiver of his right to minimum wage or overtime would necessarily decrease other employees' abilities to insist on receiving those rights. *Brooklyn Sav.,* 324 U.S. at 704. Other employees would be affected because of employees' inherently weaker bargaining power relative to employers. *Id.* at 708. Also, once one employer began obtaining such waivers from their employees, other employers would follow suit because they would be at a competitive disadvantage if they did not. *Sims v. Housing Authority of the City of El Paso*, 2011 WL 3862194 (W.D. Tex. Sept. 1, 2011).

While these cases deal specifically with the FLSA, their rationale applies equally to North Dakota, Ohio, and Pennsylvania state overtime laws, particularly given that all of these state overtime laws are patterned after the FLSA. *See, e.g., Ballard v. Beverly Ent., Inc.*, 107 Ohio App. 3d 5, 8, 667 N.E.2d 993, 995 (1995). *See also, Boaz v. FedEx Customer Information Services, Inc.,* 725 F.3d 603 (6th Cir.2013) (an employee will not be bound by a contract entered into with his employer that has the effect of limiting his rights under the FLSA). Further, it is clear that Newpark's efforts to "contract around" by choosing

8

Texas state law are ineffective. *Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010) (state overtime laws govern state overtime claims even where the parties' supposed contract purports to call for a application of a different state's law).

**6.  PLAINTIFFS' STATE LAW CLAIMS SHOULD RELATE BACK.**

Finally, Newpark also opposes the relation back of Plaintiffs' state law classes and claims under Fed. R. Civ. P. 15(c). Rule 15(c) states that an amendment of a pleading relates back of the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." FRCP 15(c)(1)(B). The "relation-back doctrine is "liberally applied based on the idea that a party who is notified of litigation concerning a given transaction or occurrence is entitled to no more protection from statutes of limitation than one who is informed of the precise legal description of the rights sought to be enforced.'" *EnerQuest Oil & Gas, LLC v. Plains Expl. & Prod. Co.*, 981 F. Supp. 2d 575, 613 (W.D. Tex. 2013) *reconsideration denied,* No. SA-12-CV-542-DAE, 2014 WL 1652599 (W.D. Tex. Apr. 24, 2014) (quoting *Williams v. United States,* 405 F.2d 234, 236 (5th Cir.1968). "If an amended complaint presents a new legal theory based on the same operative facts, the amendment will relate back." *Id.* (citing *F.D.I.C. v. Bennett,* 898 F.2d 477, 477, 479 (5th Cir.1990)).

There is no question that Plaintiffs' amended complaint simply adds new state law claims based on the same operative fact. As in the original complaint, Plaintiffs allege Newpark failed to pay a defined group of workers (Fluid Service Technicians) overtime for hours worked in excess of 40 in a workweek based on a common exemption policy (*Compare* Docket Entries 1 *and* 123). The same acts are alleged to violate both state and federal law. *Id.*; *Lyon v. Whisman*, 45 F.3d 758, 761 (3d Cir.1995) (Where "the same acts violate parallel federal and state laws, the common nucleus of operative facts is obvious."). As many courts have noted, Plaintiffs' state law claims "essentially replicate the FLSA claims." *Lindsay v. Gov't Employees Ins. Co.*, 448 F.3d 416, 425 (D.C. Cir. 2006); *Brickey v. Dolencorp, Inc.*, 244 F.R.D. 176, 178 (W.D.N.Y. 2007) ("the Amended Complaint invokes the laws of four states, all of which are largely

9

parallel to the FLSA"). Thus, the "new claims in [the] amended complaint concern the same alleged conduct." *Randolph v. Centene Mgmt. Co., LLC*, No. C14-5730 BHS, 2015 WL 5794326, at *3 (W.D. Wash. Oct. 5, 2015) (relating back state law wage claims). Because the state law claims "share a common core of operative facts with [the] original claims, the relation back doctrine applies." *Id.*

Newpark's claimed "lack of notice" is easily dispatched by reference to its SEC filings. Since the date this complaint was filed, Newpark has known that plaintiffs sought "seeks damages and penalties for the Company's alleged failure to: properly classify its field service employees as 'non-exempt' under the FLSA; and pay them on an hourly basis (including overtime)." *See* Newpark Resources, Inc., Quarterly Report (10-Q) (July 25, 2014) at 11.[9] It was also on notice that it faced liability to all of its Fluid Service Technicians (not just the members of the state law classes. *See* Newpark Resources, Inc., Quarterly Report (10-Q) (May 1, 2015) at 10[10] (The Court has conditionally certified a class of plaintiffs as those working as fluid service technicians for Newpark Drilling Fluids for the past 3 years. Beginning in early March of 2015, notification was given to 658 current and former fluid service technician employees of Newpark regarding this litigation and those individuals have the opportunity to "opt-in" to the *Davida* litigation.). Newpark clearly had its overtime policies were being challenged and that it faced liability to all its Fluid Service Technicians. Nothing further is required. *See ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1007 (9th Cir. 2014) (holding relation back appropriate under Rule 15(c)(1)(B) where original and amended pleading concerned same historical events even though amended claims were explicitly excluded from original).

Furthermore, Newpark will not suffer any prejudice from relating back the state law claims. As stated, Plaintiff's FLSA and state law claims all center on Newpark's uniform overtime policies, and it will not have to change its litigation strategy to defend against the new plaintiff classes or their state law claims. Nor is this a case where Plaintiff's counsel repeatedly indicated no class allegations would be

---

[9] http://www.newpark.com/interests/investors/information-and-reports/sec-filings
[10] http://www.newpark.com/interests/investors/information-and-reports/sec-filings

forthcoming but then suddenly moved to include class actions allegations that would massively increase the scope of the case. *Corns v. Laborers Int'l Union of N. Am.*, 2014 WL 131963, at *2–3 (N.D. Cal. Mar. 31, 2014). Defendant knew the factual bases for the state law claims at the outset of the case, and it will not suffer any prejudice from relating back Plaintiffs' state law claims.

**7.      CONCLUSION.**

Newpark's motion to dismiss should be denied.

> Respectfully submitted,
>
> **BRUCKNER BURCH PLLC**
>
> **/s/ Rex Burch**
> By: _____
>      Richard J. (Rex) Burch
>      Texas Bar No. 24001807
> 8 Greenway Plaza, Suite 1500
> Houston, Texas  77046
> (713) 877-8788 – Telephone
> (713) 877-8065 – Facsimile
> rburch@brucknerburch.com

### CERTIFICATE OF SERVICE

I filed this document via the CM/ECF system which will send notification to all counsel of record.
**/s/ Rex Burch**
_____
Richard J. (Rex) Burch